## Webb *against* Dietrich.

The reasons for which the Orphans' Court may dismiss executors, or require them to give security, besides those of lunacy and drunkenness, are prescribed by the Act of 29th March 1832; and that they sold the real estate of their testator, and became themselves the purchasers, is not one of them.

The rule of equity which prohibits a trustee from purchasing the trust property is not founded on the assumption that he is thereby guilty of fraud; but it is a rule of public policy which applies in all cases, whether there be fraud or not.

ERROR to the Common Pleas of *Columbia* county.

Adam Dietrich and wife against Samuel Webb, Thomas Webb and Joshua Webb. Feigned issue. This case originated in a petition to the Orphans' Court by the plaintiffs, in which they alleged that Samuel Webb, the father of the defendants, by his will devised a tract of land to his executors, the defendants, to be sold, and in the proceeds of which the plaintiffs were interested; that they made a pretended sale thereof to one Thomas Creveling for an inadequate price, who reconveyed the same to the defendants for the same consideration; and praying the court to award a citation to the defendants to appear at the next Orphans' Court to show cause why they should not be discharged from the executorship of the estate of the said testator. The executors appeared in pursuance of the citation, when the petitioners alleged that " the sale of the land was fraudulent and not made *bonâ fide* and for a fair price;" all of which was denied by the respondents. Whereupon the Orphans' Court directed the parties to enter into a feigned issue to try this allegation and denial.

The court below thus directed the jury:

ANTHONY (President).—If the jury are satisfied that the sale by the defendants to Thomas Creveling was a sham sale, then it was not a sale *in good faith*, and it is of no consequence what was the price, *whether fair or unfair, high or low;* but if the jury believe the sale to Thomas Creveling was an absolute *bonâ fide* sale, not for the purpose of getting him to buy in the land for the defendants, then the jury will inquire whether the sale was for a fair price.

The jury rendered a verdict for the plaintiffs.

*Cooper* and *Greenough*, for plaintiffs in error, cited 1 *Yeates* 307; *Tol. Exrs.* 354.

*Pleasants* and *Comly*, contra, cited 2 *Rawle* 418; 5 *Watts* 304.

[Webb v. Dietrich.]

The opinion of the Court was delivered by

SERGEANT, J.—If the object of the present proceeding is to set aside the sale to Thomas Creveling of the 5th April 1834, it seems to be a singular mode of arriving at it.   The amicable action and issue recite that the deed was made to Creveling by the executors for the purpose of defrauding the other devisees, and they were cited to show cause why they should not be discharged from the executorship.   But (except the cases of lunacy or drunkenness) the only ground of such proceeding against an executor in the Orphans' Court that I am aware of is under the Act of 29th March 1832, for wasting or mismanaging the estate, or because he is like to prove insolvent, or has neglected or refused to exhibit true and perfect inventories, or render full and just accounts; and the Orphans' Court is authorized to require security, on default of giving which the court may, by the 23d section, dismiss him, except in the special cases mentioned in the proviso to the 22d section, which do not exist in this case.   So that the application appears to be irregular in its terms, and, if the executor should choose to give security for the performance of his trust, the result of the issue would fail to effect the object proposed.

But there is another difficulty which has grown out of this mode of attempting to try the question.   The issue formed appears to be whether the deed was a fraudulent one, and not *bonâ fide* for a fair price.   In the charge of the court, however, the jury were instructed that whether the sale to Creveling was or was not *bonâ fide* and for a fair price, yet if it was made for the purpose of getting him to buy in the land for the defendants, then it was a fraudulent sale within the issue.   In giving this instruction, we think the court below erred.   Without limiting ourselves to the words of the issue, (which indeed by this interpretation would present a double issue), the rule of equity which prohibits a trustee for sale from purchasing the trust property, *is not founded* on his being necessarily guilty of fraud in so doing.   It is a rule of public policy which applies in all cases, whether there be fraud or not, and indeed its great object is to prevent fraud by taking away the temptation to commit it.   Another reason for the rule is the difficulty, if not impossibility in many instances, of ascertaining whether there was fraud or not.

If, in the present case, the sale was not made for a fair price, it would be fraudulent within the issue.   But if it was made to Creveling as the agent for the executors, it would be prohibited by the policy of the law, however honestly designed or effected by the executors.   The remedy for the party, however, in that case must be by some other proceeding.

We perceive no error in the matters contained in the bills of exception.

Judgment reversed, and *venire de novo* awarded.